UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL LAYNE AVERY,

       Plaintiff,                           CIVIL ACTION NO. 11-14937

       v.                                DISTRICT JUDGE PATRICK J. DUGGAN

COMMISSIONER OF                 MAGISTRATE JUDGE MARK A. RANDON
SOCIAL SECURITY,

       Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkts. 9, 10)**

I. **PROCEDURAL HISTORY**

    *A.*    *Proceedings in this Court*

On November 9, 2011, Plaintiff filed suit seeking judicial review of the Commissioner's decision to deny benefits (Dkt. 1). Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), the matter was referred to this Magistrate Judge to review the Commissioner's decision (Dkt. 3). Cross-motions for summary judgment are pending (Dkts. 9, 10). Plaintiff also filed a reply brief (Dkt. 12).

    *B.*    *Administrative Proceedings*

Plaintiff applied for benefits on September 9, 2009, alleging that he became unable to work on June 22, 2009 (Tr. 124-127). The application was initially denied by the Commissioner on November 30, 2009 (Tr. 54-64). Plaintiff requested a hearing and, on November 2, 2010, Plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Elliott Bunce, who considered the case *de novo*. In a decision dated December 17, 2010, the ALJ found that

Plaintiff was not disabled (Tr. 11-18).  Plaintiff requested a review of this decision on January 6, 2011 (Tr. 7).  On September 19, 2011 the ALJ's decision became the final decision of the Commissioner when, after the review of additional exhibits[1], the Appeals Council denied Plaintiff's request for further review (Tr. 1-3).

In light of the entire record, this Magistrate Judge concludes that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled.  Accordingly, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, that Defendant's motion for summary judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

II.     **STATEMENT OF FACTS**

   A.     *ALJ Findings*

Plaintiff was 41-years-old on the date the application was filed (Tr. 17).  Plaintiff has past relevant work as a manager (Tr. 17).  The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since June 22, 2009 (Tr. 13).

At step two, the ALJ found that Plaintiff had the following "severe" impairments: gouty arthritis, hypertension, diabetes, heartburn and gastritis, sleep apnea, and an adjustment disorder with depressed mood.  *Id*.

At step three, the ALJ found no evidence that Plaintiff's impairments or combination of impairments met or medically equaled one of the listings in the regulations (Tr. 15).

---

[1]  In this circuit, where the Appeals Council considers additional evidence but denies a request to review the ALJ's decision, the "AC" exhibits submitted to the Appeals Council are not part of the record for purposes of judicial review.  *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993); *Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 148 (6th Cir. 1996).

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform:

> work that does not require: exertion above the sedentary level; or more than occasional stooping; or more than simple, routine, repetitious tasks, with one- or two-step instructions; or strict production quotas, defined as the requirement to produce a specified number of units of work in a specified period or time

(Tr. 16).

At step four, the ALJ found that Plaintiff could not perform his previous work as a manager (Tr. 17).

At step five, the ALJ denied Plaintiff benefits, because the ALJ found that Plaintiff could perform a significant number of jobs available in the national economy, such as assembler (48,000 jobs), packager (74,000 jobs), and inspector (31,000 jobs) (Tr. 18).

### B.   *Administrative Record*

Plaintiff's motion for remand only disputes the ALJ's evaluation of Plaintiff's treating source statement -- a statement that concludes Plaintiff cannot work a simple job on a regular, full-time basis due to depression (Tr. 435).  Thus, while the ALJ alluded in his report to other severe impairments with which Plaintiff is afflicted (Tr. 13), this Report and Recommendation focuses on the references to Plaintiff's depression in the administrative record.

#### 1.   **Plaintiff's Testimony and Statements**

Plaintiff first referenced his depression in a Function Report, completed at the end of September 2009 (Tr. 159).  In his general remarks, Plaintiff said that he does not function like he used to, has "no energy," and is "depressed" (Tr.166).  When asked about daily activities, Plaintiff stated he sits around his house on bad days, but performs yard work on good days (Tr. 159).  Plaintiff reported that while he does not do his own ironing, he does prepare "weekly"

meals and has the ability to do laundry and ironing (Tr. 161).  Plaintiff further reported that he shops for groceries and is able to handle his own money (Tr. 162-163).  Socially, Plaintiff reported that he talks and spends time with others daily, but does not "go out" or "move around the house" as much as he used to (Tr. 163).  Plaintiff also noted having some problems with memory, completing tasks, and concentration (Tr. 163-164).  In particular, Plaintiff described needing reminders to see the doctor, trouble remembering his doctor's instructions, and difficulty remembering things from day to day (Tr. 163, 165).

      In a Disability Report that Plaintiff completed, he described depression as an illness that limits his ability to work (Tr. 177).  Beyond that initial description, Plaintiff did not mention depression when asked about how his illnesses limit his ability to work and why his illnesses forced him to work fewer hours (Tr. 177).  Plaintiff also failed to note any medications he takes or tests performed due to his depression (Tr. 181-82).  On a Recent Medical Treatment form, Plaintiff wrote that his recent diagnosis of other "debilitating conditions" made him feel "depressed" and "like [his] life is useless…" (Tr. 184).  On a Claimant's Medications form, Plaintiff noted taking 50 milligrams of Zoloft and 30 milligrams of Cymbalta daily for his depression (Tr. 185).

      At the hearing, Plaintiff specifically spoke to his depression a few times.  Plaintiff stated that he is taking medication for his depression, but has never seen either a counselor or a psychiatrist for treatment (Tr. 33).  Plaintiff also noted that his depression medication does not produce any side effects (Tr. 33).  When asked what would keep him from working a simple, low-stress job for 40 hours a week, Plaintiff did not list his depression as a potential barrier (Tr. 34).  Plaintiff did report having problems with both memory and concentration (Tr. 34).  In

particular, Plaintiff stated he cannot "pay attention to…anything" and can never remember what he is doing for long enough to complete the task (Tr. 34).

At the hearing, Plaintiff's attorney emphasized the treating source statement made by Gary Brooks, M.D., Plaintiff's treating physician (Tr. 48). The attorney accentuated Dr. Brooks' opinion that many of Plaintiff's depression-related problems arose from work stress (Tr. 48). Additionally, Plaintiff's attorney requested the ALJ order an independent psychiatric evaluation to fully understand Plaintiff's emotional problems (Tr. 49-50).

### 2. Plaintiff's Girlfriend's Testimony and Statements

Plaintiff's girlfriend, Beatrice Tatum, testified at the hearing on Plaintiff's behalf. In a Third Party Function Report completed on September 30, 2009, Tatum wrote that Plaintiff is "so depressed" and that she "[does not] know him anymore" (Tr. 157). Tatum also wrote that Plaintiff's life has changed "so fast" (Tr. 157). When asked about Plaintiff's daily activities, Tatum stated that Plaintiff mostly lays around the house and sleeps (Tr. 150).

Tatum mentioned many changes in Plaintiff's personal care, including: not caring about his appearance, only bathing three times per week, getting fewer haircuts, and shaving less frequently (Tr. 151). Tatum also said that Plaintiff only prepares meals three times a month due to being tired and does not do any house or yard work, other than taking out the trash one time per month (Tr. 152). Socially, Tatum reported that Plaintiff "always wants to be alone" and is "depressed" (Tr. 154-155).

Among other things, Tatum noted that Plaintiff's illness has affected his memory, ability to complete tasks, concentration, understanding, and ability to follow instructions (Tr. 155). Tatum elaborated, writing that Plaintiff has a "short attention span" and cannot "remember what was said…" (Tr. 155). Finally, Tatum reported that Plaintiff cannot handle stress -- a feeling

that makes Plaintiff cry -- and that sometimes Plaintiff says he "wishe[s] he was dead" (Tr. 156).

Tatum also appears to have completed a Disability Report for Appeal on Plaintiff's behalf. In that Report, Tatum wrote that Plaintiff's depression was getting worse (Tr. 142). When asked how Plaintiff's illness was affecting his ability to care for his personal needs, Tatum stated that Plaintiff's memory was bad and that she had to take care of his basic needs (Tr. 145). Tatum did not note any tests taken or doctors seen specifically for Plaintiff's depression (Tr. 143, 146). Tatum concluded by remarking that Plaintiff "feels worthless and useless as a man" and is "talking about suicide more often" (Tr. 147). Tatum also said that she was "…afraid [Plaintiff] might do something to harm himself" and felt like Plaintiff's depression was "…making him a bad person" (Tr. 147).

### 3. Medical Evidence

The first record of Plaintiff's depression is from August 25, 2009, when Dr. Brooks prescribed Plaintiff 50 milligrams of Zoloft daily (Tr. 304). In November of 2009, Plaintiff was examined by psychologist Michael Brady, Ph.D., on behalf of the State of Michigan Disability Determination Service (Tr. 321). In his report, Dr. Brady wrote that Plaintiff "struggles from depressive symptoms that [have] been present for six years and have increased in severity over the past year" (Tr. 320). As a result, Dr. Brady diagnosed Plaintiff with Adjustment Disorder (Tr. 320). Stemming from his depression, Dr. Brady noted that Plaintiff "is unmotivated, fatigued, and has diminished libido" (Tr. 320). Other symptoms that Dr. Brady found Plaintiff to exhibit included: "worthlessness, occasional thoughts of suicide, social isolation and sleep disturbances" (Tr. 320).

Dr. Brady also indicated several areas of workplace difficulty that Plaintiff could experience as a result of his depression (Tr. 320). Dr. Brady wrote that Plaintiff's "ability to

relate and interact with others…is impaired," and that his "depression and distress could affect his interpersonal relationships in the workplace" (Tr. 320). Dr. Brady also wrote that Plaintiff "will struggle to perform simple and complex tasks without major limitations," and that "[h]is ability to maintain concentration is poor" (Tr. 320). Dr. Brady concluded by stating that Plaintiff's "ability to withstand the normal stressors associated with a workplace [setting] is impaired" (Tr. 320).

On May 14, 2010, Dr. Brooks again prescribed Plaintiff a daily dosage of 50 milligrams of Zoloft (Tr. 397). On October 13, 2010, Dr. Brooks changed Plaintiff's depression prescription to 10 milligrams of Celexa to be taken four times each day (Tr. 433).

On November 1, 2010, Dr. Brooks issued a treating source statement on behalf of Plaintiff (Tr. 435). In the statement, Dr. Brooks stated depression as Plaintiff's principal diagnosis (Tr. 435). Dr. Brooks attributed Plaintiff's improper testing of his sugars for diabetes to Plaintiff's depression (Tr. 435). Dr. Brooks also noted concentration problems that resulted in Plaintiff only giving simple yes/no answers to questions rather than elaborating further (Tr. 435). Dr. Brooks opined that Plaintiff "would be lost" without his girlfriend, who "does almost all of the talking for him," in "marked contrast" to when Plaintiff worked at General Motors (Tr. 435). In conclusion, Dr. Brooks wrote that Plaintiff "would not even be able to work a simple job on a regular, full-time basis," which is "due to [Plaintiff's] depressive symptoms, decreased concentration, and difficulty conversing or relating to others" (Tr. 435).

Plaintiff's General Motors medical records from August 14, 2003 to August 10, 2009 do not contain any complaints of or treatment for depression. Similarly, Plaintiff's St. Mary's of Michigan emergency department records from March 23, 2008 to March 24, 2010 lack any mention of depression. At the same time, Plaintiff's most recent St. Mary's of Michigan

emergency department record, dated March 24, 2010, affirmatively states that Plaintiff did not have depression and had a "[n]ormal affect" (Tr. 376).

### 4. Vocational Expert

The Vocational Expert ("VE") first stated that Plaintiff's past work, a shift supervisor position, consisted of light, skilled work (Tr. 44). The ALJ then asked the VE to consider an individual of Plaintiff's age, education, and work history who is able to perform work at a light exertion level that requires no more than occasional stooping; that does not expose the worker to poor ventilation or extremes of dust, humidity, or temperature; that consists of no more than simple, routine, repetitious tasks with one or two-step instructions; and that does not impose strict production quotas (Tr. 44-45). Based on that description, the ALJ asked the VE whether there would be any unskilled, entry-level occupations that a person with the hypothetical profile could perform (Tr. 45). The VE responded affirmatively with multiple examples from the light unskilled category, including: 169,000 food preparation worker jobs, 84,000 information clerk jobs, and 213,000 stock clerk jobs nationally (Tr. 45).

The ALJ then asked the VE to consider a second hypothetical that consisted of the same individual outlined in the first hypothetical, with the only change being that the individual's maximum exertion is at the sedentary level (Tr. 45). The VE again affirmatively stated that there would be unskilled, entry-level occupations that an individual who fit the second hypothetical could perform, including: 48,000 bench assembler jobs, 74,000 packager jobs, and 31,000 inspector jobs nationally (Tr. 45).

Plaintiff's attorney asked the VE whether a hypothetical claimant who fit the above descriptions, and was off task for 20% of each eight-hour workday resulting from depression and distracting pain, would be precluded from working (Tr. 46). The VE responded that there were

no statistics that accurately reflected workplace productivity levels, but that if the hypothetical claimant was physically missing from the work site 20% of the time, that would preclude work (Tr. 47-48).

### C. Plaintiff's Claims of Error

Plaintiff's sole contention on appeal is that the ALJ did not properly consider Dr. Brooks' treating source statement (Pl. Br. 3). In particular, Plaintiff contends that, based on the written opinions of Dr. Brooks and Dr. Brady, the ALJ should have assigned Dr. Brooks' treating source statement controlling weight (Pl. Br. 5). Plaintiff also contends that even if controlling weight should not have been given to the treating source statement, the ALJ did not perform a proper analysis of the enumerated factors under 20 C.F.R. § 404.1527(d)(2) (Pl. Br. 5). Further, Plaintiff argues that the ALJ did not provide "good reasons" for the rejection of Dr. Brooks' opinions (Pl. Br. 5). As a result, Plaintiff contends the ALJ's decision is not supported by substantial evidence and, therefore, must be remanded pursuant to Sentence Four of § 405(g) (Pl. Br. 5-6).

## III. DISCUSSION

### A. Standard of Review

In enacting the Social Security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *See Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *See Bowen v. Yuckert*, 482 U.S. 137 (1987). If

relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may...consider the credibility of a claimant when making a determination of disability"); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the "ALJ's credibility determinations about the claimant are to be given great weight, particularly since the ALJ is charged with observing the claimant's demeanor and credibility") (quotation marks omitted); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence"). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers*, 486 F.3d at 247, quoting, Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers*, 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

The scope of this Court's review is limited to an examination of the record only. *See Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *See Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x. 496, 508 (6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted

by a party") (internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed.Appx. 521, 526 (6th Cir. 2006).

### B. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord, Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x. 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits Program ("DIB") of Title II (42 U.S.C. §§ 401 *et seq*.) and the Supplemental Security Income Program ("SSI") of Title XVI (42 U.S.C. §§ 1381 *et seq*.). Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also*, 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments, that "significantly limits...physical or mental ability to do basic work activities," benefits are denied without further analysis.

> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534. "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by hi impairments and the fact that he is precluded from performing his past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is disabled, the burden transfers to the Commissioner. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

    **C.**    *Analysis and Conclusions*

As indicated above, Plaintiff argues that the ALJ erred by not properly evaluating Dr. Brooks' opinion (Pl. Br. 3). In particular, Plaintiff contends that the ALJ's decision does not

provide "good reasons" for failing to give Dr. Brooks' opinion controlling weight based on its support from Dr. Brady's examination, and it did not properly apply the 20 C.F.R. 404.1527(c)(2) factors to decide what weight to accord Dr. Brooks' opinion (Pl. Br. 5). Defendant responds that the ALJ's decision should be affirmed because it falls within the "zone of choice" and is supported by substantial evidence (D. Br. 7). Specifically, Defendant alleges that it was reasonable for the ALJ to discount both Dr. Brooks' and Dr. Brady's opinions due to Plaintiff's limited treatment for depression (D. Br. 8).

The determination of whether the claimant is disabled within the meaning of the Social Security Act is reserved to the Commissioner, not the treating physician. *See* 20 C.F.R. 404.1527(d)(1); *see also Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (citing *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985)). The treating physician rule provides that greater deference is generally given to the opinions of a treating physician than to those of a non-treating physician. *See* SSR 96-2p, 196 WL 374188, at *1; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004). An ALJ shall give a treating physician's opinion controlling weight if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson*, 378 F.3d at 544 (quoting 20 C.F.R. § 404.1527(c)(2)). However, a treating physician's opinion is not entitled to controlling weight if based solely on his client's reporting of symptoms and conditions. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876-77 (6th Cir. 2007).

If the ALJ does not accord controlling weight to a treating physician's opinion, the ALJ must apply a list of factors to determine what weight the treating physician's opinion will be accorded, including: (1) the length of the treating relationship and the frequency of examination,

(2) the nature and extent of the treatment relationship, (3) the degree to which the opinion is supported by relevant evidence or explanation, (4) the consistency of the opinion with the record as a whole, (5) the specialization of the treating source, and (6) other factors that tend to support or contradict the opinion.  20 C.F.R. § 404.1527(c)(2); *see also Wilson*, 378 F.3d at 544.

Additionally, the treating physician rule contains a "clear procedural requirement": the ALJ must provide "good reasons" for the weight given to the treating source's opinion.  *Wilson*, 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(c)(2)).  The ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  SSR 96-2p, 196 WL 374188, at *5; *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).

Two grounds justify the procedural requirement.  First, the explanation "'let[s] claimants understand the disposition of their cases, particularly where a claimant knows that his physician has deemed him disabled and therefore might be bewildered when told by an administrative bureaucracy that she is not, unless some reasons for the agency's decision is supplied.'"  *Wilson*, 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).  Second, the explanation "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule."  *Wilson*, 378 F.3d at 544.  The importance of providing "good reasons" means that "[an ALJ's] failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight accorded the opinions denotes a lack of substantial evidence, even

where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243.

After reviewing the record, this Magistrate Judge finds that the ALJ, in making his decision, gave "good reasons" for giving less than controlling weight to Plaintiff's treating physician. In explicitly considering and discounting Dr. Brooks' statement, the ALJ reasoned that "[t]he objective evidence, including Dr. Brook[s'] treatment records, shows conservative treatment, with no documented severe exacerbation of the claimant's symptoms" (Tr. 17). While concise, the ALJ's analysis is accurate, clearly instructs Plaintiff as to why his treating physician's opinion was not given controlling weight, and permits meaningful review under the treating physician rule.

The ALJ, when evaluating whether Plaintiff had an impairment that met or medically equaled a listed impairment earlier in his opinion, more specifically discounted Dr. Brooks' opinion by stating that the only places depression appears in the record are: two occasions in Dr. Brooks' treatment records, Dr. Brooks' treating source statement, and when Plaintiff testified to poor concentration (Tr. 15). The ALJ went on to state that although Dr. Brooks, Dr. Brady, and Plaintiff each "noted problems with concentration," "the limited record reference[s] do not show that [Plaintiff] is unable to perform the simple tasks, without strict production quotas" (Tr. 15). The ALJ additionally noted that "there is no episode [of decompensation], which attests to a lack of disabling severity" (Tr. 15).

The Sixth Circuit has stated that an ALJ "is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Cohen v. Sec. of Dept. of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992)). Accordingly, the

ALJ's opinion clearly supplied good, specific reasons to sustain his ruling that Dr. Brooks' opinion did not deserve controlling weight.

Plaintiff argues that Dr. Brady's examination provides the support necessary to give Dr. Brooks' opinion controlling weight (Pl's Br. 5). However, the ALJ clearly considered Dr. Brady's examination and resulting opinion (Tr. 15). In doing so, the ALJ discounted Dr. Brady's opinion for the same reason as he rejected Dr. Brooks' opinion -- little or no record evidence indicating disabling depression, demonstrated by: no "ongoing severe symptoms," no "serious incident [of isolation] with family, friends, or authority figures," no concentration problems that render Plaintiff "unable to perform the simple tasks," and "[no] repeated episodes of decompensation" (Tr. 15). Although the ALJ never explicitly considered the possibility that the opinion of Dr. Brady corroborates Dr. Brooks' statement, his analysis of Dr. Brady's opinion made it unnecessary. Moreover, the ALJ's assessment Dr. Brady's opinion was more than sufficient, given the Sixth Circuit's stance that a consulting physician's opinion is "entitled to no special degree of deference." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994) (citing *Atterberry v. Sec. of Health & Human Servs.*, 871 F.2d 567, 572 (6th Cir. 1989)).

Beyond finding that Dr. Brooks' opinion was not entitled to controlling weight, the ALJ considered the 20 C.F.R. § 404.1527(c)(2) factors to determine what weight Dr. Brooks' opinion was entitled to receive. The ALJ's statement that "[t]he majority of [Plaintiff's] treatment records address the period within 12 months of June 22, 2009, the alleged onset of disability," combined with the ALJ's reference to many of Plaintiff's visits to Dr. Brooks, shows that the ALJ considered the length of the treating relationship and the frequency of examination (Tr. 13, 14). The ALJ adequately addressed each of the nature and extent of the treatment relationship, supportability, and consistency factors by noting the limited reference to Plaintiff's depression in

the record (Tr. 15) and stating, as noted above, that "[t]he objective evidence, including Dr. Brook[s'] treatment records, shows conservative treatment, with no documented severe exacerbation of [Plaintiff's] symptoms" (Tr. 17).  Furthermore, the ALJ avoided any doubt by specifically stating that he "considered opinion evidence in accordance with the requirements of 20 [C.F.R.] 404.1527…" (Tr. 16).  While the ALJ was relatively succinct in his review of the above factors, his analysis is in accordance with *Allen v. Comm'r of Soc. Sec.*, which found that a single "brief" reason given by an ALJ for discounting the opinion of a treating physician was capable of "reach[ing] several of the factors that an ALJ must consider when determining what weight to give a non-controlling opinion by a treating source…" *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 651 (6th Cir. 2009).

The ALJ also clearly assigned a weight to Dr. Brooks' opinion based on his consideration of the above factors.  The ALJ initially stated that he did "not find [Dr. Brooks'] statement controlling on the issue of disability" (Tr. 17).  The ALJ later elaborated, concluding: "I concur that [Plaintiff] cannot perform his past skilled work as a manager, but I fail to find evidence supporting an inability to do the simple tasks, with no strict production quotas specified in the RFC, at the sedentary level" (Tr. 17).  Thus, while the ALJ unambiguously did not give controlling weight to Dr. Brooks' opinion, it is also clear that he did give Dr. Brooks' statement some weight when making his conclusions.

In sum, this Magistrate Judge concludes that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decision makers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

## III. RECOMMENDATION

Based on the foregoing, it is **RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED**, that Defendant's motion for summary judgment be **GRANTED**, and that the findings and conclusions of the Commissioner be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be no more than 20 pages in length unless, by motion and order, the page limit is extended by the court. The response shall address each issue contained within the objections specifically and in the same order raised.

                                              s/Mark A. Randon
                                              MARK A. RANDON
                                              UNITED STATES MAGISTRATE JUDGE

Dated: August 22, 2012

*Certificate of Service*

*I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, August 22, 2012 by electronic and/or ordinary mail.*

*s/Melody Miles*
*Case Manager to Magistrate Judge Mark A. Randon*
(313) 234-5540